Yarls, Jr. v. Derwyn Bunton Mr. Buston, are we ready? May it please the Court, Brandon Buskey on behalf of the appellants, Derwyn Yarls, Leroy Shaw, and Douglas Brown. Your Honors, plaintiffs were three of among thousands across the state of Louisiana who were placed on waiting lists for representation by the public defender system and whose cases were then stayed by state courts precisely because the public defender could not provide representation. Putting aside the issue of waiver, where both defendants in this case have waived any objection to abstention, we see here essentially a bright... Waived any objection to? Sorry, waived any abstention objection to federal jurisdiction. Now isn't that interesting? Yes. That the defendants have chosen to waive an objection that other defendants normally would make. Doesn't that, shouldn't that factor be used in determining whether there's true adversarialness in this case? No, Your Honor. The Supreme Court and numerous federal courts have acknowledged that it is a defendant's right whether or not to invoke an abstention defense. It is an affirmative defense. Right, but the Supreme Court has not done away with the idea that we actually have to see if we have a case in controversy of an adversarial nature, has it? That is correct, and the district court actually requested briefing on that matter, and we submitted briefing on that very issue, asserting the parties were in fact adverse to one another. And that is because despite the defendant's abstract agreement that our clients were entitled to counsel, they had not actually provided... It's three defendants, yes, Your Honor. Three criminal defendants, and they are being denied their Sixth Amendment right to counsel at this time. They're on the wait list. Was any motion ever made to protect them from the state prosecution on the grounds that counsel was not being furnished? Your Honor... Yes or no? Not that I'm aware of, Your Honor. Okay, so why didn't the public defender that you're representing make some kind of motion to get relief for those individuals? They're still sitting in jail as far as the record is concerned here. Is that correct? They were at that time, Your Honor. But they're not anymore, and we'll talk about mootness in a minute, but go ahead and continue this one. Your Honor, we... I mean, it looks like to me that they were thrown under the bus in order they could stay there and languish while you pursued this effort to try to get more funding from the State of Louisiana. No, Your Honor. To answer the question, and just to clarify, we represent the plaintiffs, the defendants who were thrown in jail in this case, not the public defender office. But to clarify, our case was not about fixing the funding system for public defense. Our case was, in fact, to make sure that the system was providing attorneys for these individuals precisely because they had been thrown. Why didn't you file a motion to dismiss the indictment? Why didn't you file a motion for your Sixth Amendment rights? You had plenty of avenues to get individual relief for those individuals instead of coming to federal court. Your Honor, the process in state court had been essentially stayed. The state courts did not conduct any proceedings on the merits once the public defender said that they were... That's what you could have objected to in state court. It's the state judge who has the power to say, no, you need to come and represent these people or I'm going to appoint somebody else so that they don't have a speedy trial act or a way to dismiss whatever the comparable state law in order to get the case dismissed. So the remedy was with the state judge. Your Honor, my client is languishing in jail. This is wrong. This is against their rights, both statutorily and constitutionally, and I would like to get relief. And state court judge, give us a lawyer that we're entitled to. No, Your Honor. I am the lawyer for these clients in their federal case. I am not a Louisiana lawyer. There were hundreds of individuals in Orleans Parish without counsel. And did they file speedy trial, motions to dismiss? Did they pursue any relief whatsoever for this conundrum that the state court was creating by just continuing these proceedings over and over again? To clarify, do you mean the public defender? The public defender or anyone on behalf of these defendants, these people who were languishing in jail. Did anyone file anything on their behalf? Not to my knowledge. Public defenders can speak to that, whether or not they filed any motions. Well, the fact that no relief was sought from the court that had the power to grant the relief is a big problem in this case. Your Honor, as we noted in our briefing, what the state courts did in this case, as this court recognized in Bice v. Louisiana Public Defender, is entirely consistent with the state supreme court's apparatus for handling precisely this kind of situation. The question is not whether it's consistent with the apparatus that exists in Baton Rouge, but whether it consists with the rights that are written in the United States Constitution. Those individuals got constitutional rights to be represented. I agree with you on that. The Sixth Amendment right is being denied. But yet no effort has been made to try to obtain Sixth Amendment rights through the usual means of state procedures to protect those individuals. Your Honor, they had no lawyers in the state proceedings. Beg your pardon? They had no lawyers in the state proceedings. The lawyers that they had in the state proceedings said we cannot provide representation, and that was what put those individuals on the waiting list. Well, then the court has to appoint a different lawyer. The court could get people in the hall to come in, I'm sure competent people, or they could have another list. The court is the one that has the responsibility to make sure people are there to represent those defendants. And if the public defender is not adequately staffed or whatever reason using the resources, and I'm not here to cast aspersions on them in any way, but if they don't have the resources to provide the services, then they have to tell the court we can't provide the services, which sounds like they did, and then the court has the responsibility to make sure somebody represents those people. It's on the court, the state court. Your Honor, the state court could have taken action perhaps in this case, but as we contend, the federal courts can also act. And what we seek here is essentially a bright-line rule to that effect. Not if the state court hasn't been asked and refused, and they're an essential party to this. Your Honor, I don't think there's any doubt that the state courts were perfectly aware of what was going on in this case. Go ahead and make your arguments on the federal issues. Go ahead. Well, then the first argument that we need to deal with then would be the doctrine of mootness. Why isn't this proceeding moot? Both for two different reasons. First, because your individual named people have all had their proceedings already. And second, for probably the broader, more important reason, why isn't it moot? Because independent of this litigation, the public defender's office has changed its policy, perhaps in response to new funding mechanisms from the state. And so there is no longer a list like this. Why isn't this whole case moot in that the non-capital defendants now have adequate funding and these people are not being deterred anymore? Your Honor, to your first question, I would agree that the individual cases have been mooted out. However, as we noted in the first footnote to our appellant brief and noted to the district court, their claims as class representatives can still go forward under cases like McLaughlin v. County of Riverside because the nature of their claims, as has been demonstrated by this case, are inherently transitory. Has this case been certified as a class action? Not yet, Your Honor. We've requested a classification on three separate occasions when we filed initially and then two separate occasions after that with each amended complaint. But if there are no other people similarly situated at this time because there is no longer a list, then that's a much bigger problem for you in mootness, isn't it, Counsel? Not in this case, Your Honor. As Defendant Dixon pointed out in his briefing, there are still 11 individuals on the capital waiting list. Capital is not similarly situated to non-capital in the way this case has been litigated, is it? Yes, it is. None of the class people are capital. They're all non-capital by definition. Your Honor, our class was defined as any individual placed on a waiting list by the public defender system in the state of Louisiana. That was the main class that we sought to certify in our second amended complaint, and we had a subclass of individuals in Orleans Parish. Neither of those classes was defined with respect to capital or non-capital status, and the important reason for that is because our claim to counsel was predicated, in large part, on an individual's right to file what's called a preliminary examination under Louisiana law. Are there any non-capital people left on this list? Excuse me? Are there any non-capital people left on this list? I don't know. Defendant Dixon's brief suggests that there are not. However, his brief also suggests that this claim is very much capable of repetition. Wait a minute. Their brief claims that there are no non-capital people on the waiting list? That is correct. You have not responded to that? You don't know? You say you don't know whether that's true or not? There is nothing in the record with respect to types of individuals who are on the capital waiting list. There is nothing in the record with respect to the current state of Louisiana budget for public defense. All of that might be very well suited to proceedings on remand to the district court to find out precisely what is going on with the waiting list and to what extent this crisis might come back imminently. Defendant Dixon's brief also points out that Orleans Parish is still in a restriction of services and that two other districts are suffering funding shortfalls very much like Orleans Parish was suffering when it began its waiting list procedure. Judge, have you moved to substitute anybody for the class? Not yet, Your Honor. Class representatives? Not yet, Your Honor. That might be an issue that we need to discuss. The class has no class representatives at this point. It does. It had representatives who filed this case initially because, as we contend, they still have standing under how the class is defined to represent both capital and non-capital. However, if it turns out the district court disagrees with that determination, we are more than happy to go back and substitute proper class members. That wouldn't be a dispositive issue. It would be a matter that we could clear up in the district court. All right. Now let me ask you, what relief do you hope to get from the defendants that you have sued who are the state public defenders and the Orleans public defenders? Those are the two defendants in this case. That's correct. What do you hope to get from them as a result of this lawsuit? Most immediately counsel for individuals placed on waiting lists. Okay. You hope, but yet you have not made a motion for this in district court on behalf of these two individuals, in state court, on behalf of these two or three individuals. No, Your Honor. We have not made a motion in the state court on behalf of these individuals, and that is because, as I was explaining earlier, we believe that federal court is also a more than competent jurisdiction for these kinds of claims to proceed. But they can get counsel not through the public defender but through other sources. The state court does not have to use the public defender to provide counsel. The state court just has to provide counsel. I mean, to be honest with you, and I would certainly give you more time to let you figure out or argue because we've been pounding you pretty good with these questions. But I would just let you go ahead with your argument. Go ahead. Go ahead and state your argument. You can have three additional minutes just to make an argument, and then we'll ask and let you make it. And then that other side may have, to the extent it is another side, may have three additional minutes as well. Go ahead. Your Honor, I would just say this. Where the cases have been stalled by the state courts because the public defender system cannot provide counsel, there is no barrier to federal courts entering a remedy to make the public defender provide counsel. And this court's decision recently in O'Donnell v. Harris County confirmed that abstention was improper in this case because it held that where the state court proceedings and where the issue at hand is the adequacy of the state court proceeding, abstention is improper because to decide whether or not there's an adequate state court remedy, you would have to decide the merits. And that is simply what is happening here and why we argue that abstention is improper in this case. Is that your argument? That it? That's it? You've got more time. No, I'm not asking you to use it. I'm just making sure you got it. I want you to say everything you need to say, and you sounded like you'd finished up. Well, Your Honor, I didn't. I appreciate your leniency on providing more argument. And I want to just really very quickly address this question. Just tell us the most important point you want to leave with us as to why you should prevail and get this case reversed. I provide at that point, Your Honor, because the state court proceedings by the state courts had been stayed precisely because the public defenders could not provide representation. And because of that, because relief in this case would facilitate the state trials, there is no requirement that we seek relief from the state courts first. 1983 does not require exhaustion. And as this Court has made clear in O'Donnell, when plaintiffs are seeking simple, nondiscretionary procedural safeguards in the pretrial setting, abstention is improper. How is it that you could get relief from us, unlike in O'Donnell that you've mentioned, where it is the judges themselves who are in the lawsuit and have to grant certain relief? How is it that we would give you the relief you seek? We can't order that the public defenders – what are we going to do? Order that the state court provide a counsel or order that the state court provide a public defender? Those are two different things. What would we order that's not being done? Your Honor, you would order that the public defender system provide counsel. The public defender system. That's who we sued, Your Honor. The public defender system, the state public defender. Yeah, but they say they can't do it. And we can't – they say they haven't got enough people to do what you want to do. We can't tell them to go out and hire more people. So how are we going to help you? If the nature of the constitutional violation is that no lawyer is being provided, and if these are the individuals directly in charge of providing a lawyer, then under Ex parte Young and a well-established body of case law, this court can order those defendants who run the system to provide counsel. And to clarify, in Orleans Parish— They say they can't do it. That is a matter for the state court to determine, to decide, as we point out in our briefing, the extent to which— And you agree they can't do it. You've agreed. I mean, essentially you've agreed they don't have proper funding. We agree they can't fund us. We agree they can't represent us. We agree they are overloaded. But yet you want us to order them to do more when they say they can't do what they're doing now, and you agree that they can't do what they're doing now. It doesn't make— Your Honor, we have a— This case is kind of ill-advised, it seems to me. Our claim is that there is a constitutional violation in not providing a lawyer, and if that remedy requires additional funding, then so be it. There is no bar. So I can do it? The federal courts can order the state legislature? No, Your Honor. The state courts would order the public defender under Ex parte Young to provide counsel— But they can't do it. They haven't got enough money, and you've agreed with that. We've agreed that the funding system is at the— Okay, but I do have a question about—two questions about that, actually. So you would have us order them to provide counsel under circumstances where they have in good faith, and we trust them as officers of the court, said that it would be a violation of ethical duties. So we're going to order counsel to be put in place in violation of ethics, legal ethics. That seems to be a big problem. It is not a big problem because we're not asking them to appoint counsel in violation of their ethical duties. We have asked for the court to require counsel that is competent within the meaning of the Sixth Amendment. Okay. Then my other question, you said directly in charge of providing counsel. They are not directly in charge of providing counsel, are they? The courts are the ones who make court appointments to provide counsel. We've acknowledged the court appoints, but Orleans Parish defender decides what case, what attorney— appoints them. Is that right? I answered yes when— Okay. Isn't there a problem with the proposed class if there's a conflict of interest between the non-capital and the capital defendants given the limited pot of funds and the way the funds have been divvied up in the past to divide between capital and non-capital defendants? Perhaps, Your Honor. We don't have any information about the waiting list for capital defendants. The problem is I don't have anybody here to argue any of these things, all of these arguments that I think up about the class. I might be able to. Okay. Thank you. Thank you, Your Honors. Is it a problem between the proposed class that there could be a conflict of interest because the pool is dividing between capital and non-capital and that could cause a class conflict? That I do not know the answer to. We don't run the conflicts list or we don't run the list. I'm sorry. Please, the court. My name is Sarah Valentine. I represent Derwin Button. He is the chief district defender of the Orleans Parish Public Defender's Office. I'm splitting my time between Mr. Landis over here who represents Mr. Dixon. He may be able to tell you more about the current system of wait lists for felony and then capital cases. Tell me, is there anything that they have said in their briefs that you disagree with? There are not much that I disagree with in their brief. I think they've well briefed the— Where is the adversarial relationship? The adversarial relationship, I believe, is between we understand and agree that these defendants deserve, should have counsel, but our problem is we do not have the ability to provide competent counsel at this moment. We understand there is a constitutional obligation to provide— But this is a funding case. This could— Is that correct? The Louisiana legislator does fund the case, and my understanding is that Mr. Dixon and the public defender's board gets funding and then allocates it among the parties, and then once we get our funding, we allocate how we believe we can best serve the indigent defendants that we are representing, which is— So this case is all a funding case. This case— And the only funder is the Louisiana legislature. The Louisiana legislator does provide the funding. So this is nothing but just a public relations deal here to get some kind of declaratory judgment from the federal courts that you can go to the Louisiana legislature and say, look, the federal courts have said that these people are being denied their right to counsel on the grounds that they are not getting properly funded. Give us more money. Well, from our position, I feel like we're sort of in a conundrum, and you're agreeing with that. We do not want to violate constitutional rights of the people we represent, and we have— But you filed motions. Well, this is the problem, and I wanted to respond to the question you asked him. Because of the caseload of the indigent defenders, of the public defenders that we have, we had to start refusing or attempting to refuse to take the cases. And once you refuse the case, you don't do anything. You don't have the time to file a motion. Somebody should come in that has not refused the case, or the court should say, I have an unrepresented defendant, and I need to give them a speedy trial. Isn't that right? The court has a responsibility once they realize that you have refused a representation to appoint a new counsel. And I think this goes to what their—I don't necessarily want to argue their case, but I believe this goes to their argument that they don't have relief right now. But nobody's asked the court for relief. They did—well, not these defendants. They attached to their complaint a hearing that was before Judge Hunter about certain defendants that didn't have representation, and he released them. So every time they don't have representation, they can file motions that say if they choose to, if the client wants that motion and it's appropriate under the law, that they should get relief. And then when all the criminal defendants in this parish have to get released, then maybe the legislature will take action because they won't want all the criminal defendants released, but that's not a problem that means it should go to federal court. The problem is once Judge Arthur released—or Judge Hunter released them, they appealed to the Fourth Circuit, who reversed his judgment, and the Supreme Court, who upheld that reversal, saying they needed to do an individual evaluation, which you need an attorney present to do an individual evaluation for each of these people who don't have attorneys. I think it's just, you know, a circular— Can you speak to Judge Elrod's mootness point that the funding crisis has been remedied, there's no longer a waiting list like this, so— I wouldn't say the funding crisis has been remedied, but I do understand that currently the Orleans Parish public defender is not operating a wait list for non-capital cases. I believe that there are one or two capital cases that are on that wait list, I think, Mr. Dixon. And in your view, why doesn't that moot the case? I think that in my view it doesn't moot the case because I don't believe that there's anything saying that we couldn't operate a waiting list in the future if it becomes necessary again, which, given the fluctuation in our funding and the fluctuation of where we get our money from and that we are still under a restriction of services protocol— How did the case become moot? Why, all of a sudden, is the wait list eliminated? The wait list is limited because I believe there was— Eliminated. I'm sorry? Eliminated. Why is there no wait list now? What happened? There was a reallocation of funding, and I believe there's also additional funding that we received. This case was filed, I believe, in 2015, and— So everything you're complaining about today has been addressed by the state legislature or other Louisiana entities? As of with non-capital cases, our wait list is no longer—we no longer have a wait list. Well, then why didn't you file a motion to—I mean, why didn't you argue in your brief that it was moot then, like anybody else would, if all the problems have been solved, with relating to all the people that are currently in this lawsuit? Because they did file a request for class certification that was unopposed, that did not get heard or was denied before he dismissed it on jurisdictional— But a normal adversary in a lawsuit would have filed that, wouldn't they have? I mean, if you didn't have a class representative, you didn't have a class action. Our position is that this is an issue that may come up again, and this is an issue that we believe there is a constitutional violation. Once a court has identified a constitutional violation, it has broad authority— Would it have come up before this episode? Had it come up previously, the waiting list? The waiting list. I do not know the answer to that. I don't believe we put that much restrictions on it. Can you kind of lay out for me the mechanics of how the reallocation occurred? That, I think, would be best by Mr. Landis. But I think there was additional funding that was provided and then— By the legislature? By the legislature. And then I believe there was a reallocation from capital funding to non-capital funding. So it makes a conflict between capital and non if it's one pot and they're taking money from the other. It does seem like there could be a conflict. Anything else you want to say? Besides that, the only thing I really was going to mention is that the district court recognized in its response, in its order ruling on the plaintiff's motion for relief from judgment on page 4 of it, that Younger can be—that the defendants can submit to jurisdiction under Younger. And the defendants in the case that he cites, Umflit v. Connick, basically argued the same thing we did. They did not raise abstention. And at oral argument, they raised that the court—this is an issue that the court really should rule on and should not abstain. Did you get permission from the state to waive Younger on behalf of the entire state? I don't think we waived Younger on behalf of the entire state. I just said that we submitted to jurisdiction. The Orleans Parish Public Defender's Office submitted to the jurisdiction. And did you need to get—that's a local government, and so it doesn't need permission from the state? I do not know the answer to that, but I can look that up and brief it for you if you'd like that. Thank you.  Thank you, Your Honors. Good morning. My name is John Landis. I represent Mr. Dixon, who's a state public defender. I think I have a good idea of what the panel is interested in, and I'll try to address some of the questions. I think I should begin with perhaps an update of what the current situation is as to wait lists in the system. As we mentioned in our brief, in 2017, the Louisiana legislature mandated an increase in the share of the total allocation that would go to non-capital versus capital. There was no increase in the total funding. It just reallocated the funding that existed. And the legislature itself reallocated? The legislature itself reallocated. Also, I believe in 2017, the city of New Orleans provided some extra funding to the Orleans Parish defender, which helped the situation. So the immediate effect of those two circumstances was to eliminate wait lists for non-capital cases, not only in Orleans Parish, but in other parishes where they existed. Now, as has been discussed, unfortunately, that resulted in wait lists for capital cases. And as of this morning, I checked with my client, there were seven capital cases within the State in which the defendants are on a wait list for full-time counsel. Are any of those — are any of the named plaintiffs capital plaintiffs? No. No, Your Honor. So they're not well-suited, though, to represent capital plaintiffs since the money is being taken from them, are they? Well, let me continue, if I will. I'm not sure I agree with that. Okay. I want to know why. Well, the outlook going forward for the non-capital cases is not good. A caseload study published in February of 2017 by a committee of the American Bar Association and the Louisiana accounting firm of Post-Await in Natterville concluded that the public defense system had the capacity to handle competently only 21 percent of its actual caseload. That means that the frontline public defenders have caseloads that are grossly in excess of any standards that are recognized, including, as you alluded to, the professional rules of professional conduct. Now, let me ask, why is that relevant to the issues that are being presented to us? I think it goes to the mootness question in that this is a situation that is likely to reoccur within the foreseeable future. Wait lists may well come back, not only in this district but in other districts. Does Louisiana law provide that lawyers must agree to take mandatory or Louisiana bar rules, provide that lawyers must agree to take pro bono cases whenever appointed by courts? Is that part of the Louisiana bar? That is part of our rules of professional conduct. However, I think to also address the question of why didn't the court appoint someone, I think some of the judges have done that, and they were — So they remain free to do that. And they were opposed by the counsel they appointed, who opposed their appointment and took it up on appeal, saying you can't — there's no money to pay us, and you can't make us represent these defendants. But you can conscript lawyers because they agree to join a bar, can't you? Right. Was the court held? Did the court hold that? I believe that's — you know, that may be a proper statement. However — Is that what the court held in Louisiana? I don't want to — Our Supreme Court has held this, that if an appointed lawyer — an appointed lawyer is entitled to be reimbursed for out-of-pocket costs and overhead expenses, and that if — this is the citizen case — and that if the appointed lawyer — if a lawyer is appointed, he or she may then move to determine a source of funding to cover those items. And further, if the court cannot identify a source of funds, then the appointed counsel can move to stay the prosecution pending the identification of funding. Or out-of-pocket expenses. Out-of-pocket and overhead. So the end result, if there's no funding, is that these cases just get stayed. And in most cases, the defendants stay in jail, and nothing happens until the public defender has gotten — you know, has gotten his next year's allocation and can represent these defendants again. So it's just a recurring cycle. I understand the dilemma that you're in. I mean, I'm sympathetic with it. Except it looks to me you're looking for a constitutional violation that has no remedy. Because, I mean, you can't come — the 11th Amendment prevents individuals, I mean, coming into the — suing the state of Louisiana here. But the federal government, the United States, can sue the state of Louisiana. And if it's that dire, I mean, it looks like the United States is — I'm not quite sure about all this, even. How they would sue the state of Louisiana to fund the indigent defendants. But you really have a problem, which I'm not all gainsaying, but there's just no solution to it. Well, I agree there's no ultimate solution. Except funding from the legislature. And I agree that this case will not provide a vehicle to order the state to provide funding. If this — if it doesn't provide a vehicle to solve the problem, it doesn't provide a remedy. Well, I think it — An adequate remedy. The remedies that the court can provide, I think, are worthwhile. We agree — everyone agrees in this case it's a six-minute violation to put a defendant on a wait list. We also submitted to the district court an agreed consent judgment that would declare the use of wait lists to be unconstitutional, that would require reporting by both Orleans Parish and the state board as to the caseloads and going forward. The problem with that was it was a concession of a non-adversarial relationship, which meant that you didn't have standing and the Federal courts didn't have jurisdiction. No, I disagree in that it was a negotiated consent judgment. The plaintiffs asked for much more and, in fact, have argued to us and I think to the court that they can get injunctive relief against my client to require him to do something. I disagree. And that's — we are adverse as to that. We were able to agree to a consent judgment as a compromise. And while that may not require that the state legislature provide funding, I think it may well cause them to consider it. Lobby and cue. It certainly is. I don't disagree with that at all. Counsel, what branch of government is the Louisiana public defender part of? The executive branch. Okay. Does the agency — so it's an agency within the executive branch. Is that right? Yes. It's a board. A board within the executive branch. Right. Does it have the authority to submit to federal jurisdiction on behalf of the entire state for purposes of waiving Younger? Well, my client was sued in his capacity as the state public defender. The board wasn't technically a party. The state attorney general could have intervened to assert the abstention. He chose not to. So we asserted it on behalf of my client, an individual, in his official capacity. So you did, but you didn't assert the abstention. We did not and believe that it would be inappropriate because this is a recurring situation. But you don't have to get permission from the AG or some other state or the governor's office. It's not done like that in your state? Not in this context. I don't want to speak to other contexts, but in this particular context, we don't believe it was required. And the state attorney general has not taken the contrary position. Mr. Landis, let me ask you, if I can, and impose on my brothers and sisters here. Just in the last two or three minutes you have, give us what your best argument for is why we should rule in your favor. I mean, I'm finding it hard to find a basis for it. Well, to summarize, I'll try to hit the high points. We believe that abstention was not proper under Younger v. Harris for the reasons that have been described. We believe that the wait lists do violate the Sixth Amendment rights of the plaintiffs. We think there can be meaningful, there can be a meaningful remedy in the form of the consent judgment that was agreed to. And that should provide an incentive to Louisiana to provide additional funding. It's not a complete remedy, admittedly, but I think it's the best remedy that can be entered in this action. Those are my arguments, Your Honor. I appreciate your time. But those proposed remedies are all sticks to ultimately prod lawmakers to pour money into the system. I think that's correct. Yes. We appreciate your candor with the court, counsel. Thank you. Thank you. Will I have a question? Can you please explain why this case doesn't fall squarely within BICE because there's no claim that has been certified and the individual plaintiffs can raise their claims in their individual criminal cases? Your Honor, I would say that this case is not covered by BICE because it is, in fact, the polar opposite of BICE. As Your Honor is aware, Younger has three prongs. One of those prongs is whether or not there's an adequate state court proceeding. The other prong, and the first prong, is whether or not the federal court would interfere with the state court proceeding by entering the judgment. And that is where we are most distinct from BICE. In BICE, the Louisiana Public Defender Office, and actually I should clarify, as you're aware, in BICE, the plaintiff there did go directly after the funding stream. The Public Defender Board said, well, if you go after our funding stream, we can't provide lawyers, and if we can't provide lawyers, the case will be stayed. That is essentially why a census is not proper in here because the public defender has already decided to withdraw lawyers from the criminal cases. The criminal cases have been stalled. A federal court telling a state court defendant—excuse me, our state court defendant, the board, and OPD to provide a lawyer cannot possibly interfere with the stayed criminal proceeding. It would, in fact, facilitate the criminal proceeding. Thank you, Counsel. Thank you.